IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

LIANNE RACHEL SUMMERS,

                    Plaintiff,                    OPINION AND ORDER

   v.

                                           12-cv-22-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                  Defendant.
---

In this *pro se* action brought pursuant to 42 U.S.C. § 405(g), plaintiff Lianne Summers seeks judicial review of an adverse decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d), and Supplemental Security Income benefits under Title XVI of the Act, codified at 42 U.S.C. §§ 1381(a) and 1382(a). Summers has submitted several pages of additional medical records not before the administrative law judge (ALJ) and contends that the ALJ (1) made a faulty credibility assessment, (2) failed to explain why he found her capable of frequent fine manipulations and (3) erred in not considering the full effects of her Lyme disease, chronic constipation and back problems. In response, the Commissioner seeks affirmance. Because there is substantial evidence in the record to support the decision, and no reversible error, the court will affirm the Commissioner's decision and dismiss this case.

BACKGROUND FACTS

      The following facts are drawn from the administrative record (AR):

Plaintiff Lianne Summers injured her back in a motor vehicle accident on June 12, 2004. (AR 351, 353.) Summers's insured status expired on September 30, 2007. (AR 168, 262.) On September 17, 2009, she filed applications for disability insurance and supplemental security income benefits, claiming that she had been disabled since June 1, 2004, because of back problems and possible Crohn's disease. (AR 244, 250, 307, 386.)

On March 25, 2011, Summers appeared in a video hearing before Administrative Law Judge (ALJ) Joseph Jacobson at which she was represented by a lawyer, William Wulf. (AR 53-84.) At the hearing, Summers testified that she could not work because of: (1) chronic back pain that sometimes radiates into her feet; (2) joint pain in her knees, hips, shoulders, and ankles from fibromyalgia and Lyme's disease that sometimes forces her to lie down for hours; and (3) occasional pain in her hands and fingers. (AR 65-66, 71-72.) She acknowledged not having too much trouble picking things up or doing things with her hands and fingers, but described problems sleeping, walking more than a quarter of a mile, falling once every couple of months and being able to stand or sit for extended periods. (AR 68-69, 72-74.)

In a written decision issued on April 14, 2011, the ALJ concluded that although Summers had several severe impairments (obesity, fibromyalgia and disorders of the back, muscles, ligaments and fascia), which prevented her from performing past work as a correction officer, retail manager and laborer, Summers still had the residual functional capacity (RFC) to perform sedentary work involving simple, routine and repetitive tasks

2

and frequent fine manipulation.[1] (AR 168-69, 171.) Relying on the testimony of a vocational expert, the ALJ also concluded that Summers was not disabled because she could perform more than 24,000 jobs available in Wisconsin. (AR 172.)

While still represented by Wulf, Summers requested that the Appeals Council review the ALJ's decision, arguing that the ALJ made a faulty credibility assessment, failed to explain why he found her capable of frequent fine manipulation and erred in not considering the full effects of her Lyme disease, chronic constipation and back problems. (AR 162-64.) The Appeals Council denied Summers' request for review on October 20, 2011, making the ALJ's determination the final Agency decision.

OPINION

A federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the [C]ommissioner, or the [C]ommissioner's designate, the ALJ." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.

---

[1] These facts are drawn from the administrative record (AR).

1987) (citation omitted). Thus, a reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In her *pro se* briefs before this court, Summers states that she is renewing her arguments made before the Appeals Council and challenging many of the ALJ's findings concerning the medical evidence, claiming that he either misunderstood or ignored various aspects of her medical records. *See* Pltf's Br., dkt. 26; Pltf's Req. for Rev. of Hrng. Dec., AR 162-63. Most of her arguments relate to the ALJ's assessment of her impairments and credibility. In addition, Summers has filed several pages of additional medical records that were not before the ALJ at the time of the hearing. These issues are addressed in reverse order below.

### A.    Additional Medical Evidence

Because the additional medical evidence was neither part of the record before the original ALJ nor considered by the Appeals Council in a decision on the merits, this court cannot consider it in reviewing that decision. *See* 42 U.S.C. § 405(g); *Wolfe v. Shalala*, 997 F.2d 321, 322 n.3 (7th Cir. 1993); *Eads v. Secretary of Dep't of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993). A district court may remand in light of additional evidence without considering the correctness of the commissioner's decision under sentence six of § 405(g), but only if (1) the evidence is new and material *and* (2)

there is good cause for the failure to produce the evidence before the ALJ. *See Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991).

As for the first of these two requirements, evidence is deemed "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding"; and is deemed "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citing *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review." *Id.* (citing *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

The "additional evidence" submitted by plaintiff consists of the following: (1) medical records showing that Summers was given antibiotics in May 2006 for "possible Lyme disease because Summers had reported that she had been diagnosed with the disease 11 years earlier (*see* Pltf's "Exh. Q," dkt. 23, exh. 3); (2) a February 22, 1981 emergency room report of an examination of Summers after she was in a car accident when she was nine years old (*see* Pltf's "Exh. X," dkt. 16, exh. 1); (3) a report from social worker Richard Pike dated January 23, 2012, detailing Summers's counseling sessions over the past few months (*see* Pltf's "Exh. Y," dkt. 23, exh. 4); a psychiatric review technique form completed by Pike on January 24, 2012 (*see* Plf's "Exh. Z," dkt. 16, exh.

2); and (5) progress notes from Summers' visits to a free clinic from June 2011 to January 2012 (*see* Pltf's supplement to medical records, dkt. 7 at 7-17).

None of this evidence satisfies either criteria for a remand under sentence six. First, the records from 1981 and 2006 were obviously in existence and available to Summer at the time of the administrative hearing, they are not new. Summers provides no reason why she did not submit the above records at the administrative hearing. As the commissioner points out, an applicant represented by counsel is presumed to have made her "strongest case for benefits." *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987). Here, Summers was represented by an attorney who affirmatively acknowledged at the hearing that the file was complete. (AR 57.) Second, although the 2011-2012 clinic progress notes are new, they are not material because they document visits and treatment that took place after the administrative hearing in March 2011, which closed the relevant disability period. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) (Since "[m]edical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and, therefore, does not meet the materiality requirement."). Third, the same is true of Pike's report and psychiatric review form. Although Pike wrote on the form that the assessment covered "September 2010 to present," his report indicates that he had seen Summers only over the past few months. (AR 3.) Further, Pike did not support his report with objective findings and admitted that he was not qualified to render a medical opinion: "I would hazard a guess, not being

a trained medical fractional, that [Summers's] ability to hold down a traditional forty hour a week job is not possible. This guess is based on some forty-five years as a psychotherapist." (AR 5.)

Accordingly, this court will not remand this case pursuant to sentence six of § 405(g) for consideration of the additional evidence submitted by Summers.

### B.     Impairments not Considered

Summers also argued to the Appeals Council and in her briefs to this court that the ALJ erred in failing to find that her Lyme disease and constipation constituted severe impairments or resulted in disabling symptoms. Under the Social Security Act, 42 U.S.C. § 223(d)(3), an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." A claimant's statements alone cannot establish an impairment. 20 C.F.R. § 404.1508, § 404.1528(a). In addition, "[t]he mere presence of some impairment [in the medical records] is not disabling per se." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also Garmon v. Apfel*, 210 F.3d 374, at *4 (Table) (7th Cir. Mar. 22, 2000) (rejecting claimant's argument that he had severe impairment because he sought medical treatment for various symptoms).

#### a.     Lyme disease

Although Summers insisted to numerous providers and the Social Security Administration that she has had Lyme disease since 1995, there are no records to

corroborate her claim. Summers points out that a nurse treated her with antibiotics in April 2010 after she presented with a tick bite and rash. (AR 423-24.) As the ALJ noted in his opinion, however, the nurse had her tested for Lyme disease and the results were negative. (AR 435.) Further, Dr. Ramon Espada, who was treating Summers for various conditions at the time, noted on July 20, 2010, that three different consulting physicians in infectious diseases, physical medicine and rheumatology opined that Lyme disease was not a concern and refused to acquiesce to Summers' demands for additional testing. (AR 513.) Accordingly, substantial evidence supports the ALJ's decision not to include Lyme disease as one of Summers's severe impairments.[2]

### b. Constipation

Although Summers claims that the ALJ failed to consider evidence of her debilitating and chronic constipation, she never raised it at the hearing. While Summers identified Crohn's disease as one of her impairments on her applications for benefits, she has never received such a diagnosis. And while she now explains in her brief that she actually was referring to her constipation, there is no documentation of any gastrointestinal disorder in her medical records. (*See* Opin. of Dr. Bush, state agency physician, concluding same, AR 387.)

In support of her alleged disabling symptoms, Summers instead identifies the following self-reports of her constipation in her medical records: (1) August 4, 2004

---

[2] Even though there was no evidence of Lyme disease, the ALJ *did* credit Summers's complaints of joint pain in finding that she was severely impaired with fibromyalgia and disorders of the muscle, ligaments and fascia.

progress note indicating she has constipation (AR 353); (2) September 1, 2005 progress note indicating that she is "really constipated" (AR 372); and (3) April 19, 2010 progress note listing severe chronic constipation as one of 25 stated health concerns (AR 437). These sporadic references to Summers being constipated do not constitute significant evidence of a disabling condition or severe impairment. *See Baker v. Astrue*, 2010 WL 538228, *5 (S.D. Ind. Feb. 8, 2010) (finding sporadic complaints of medication side effects did not evidence severe impairment or limitation). Summers never received treatment for her constipation. The physician who examined her on April 19, 2010 noted that her abdomen was normal but offered her a referral for a colonoscopy, which she apparently never received, even though she continued to receive medical care at the same provider for another four months. (AR 440-41.) Further, all of the above notations were based on Summers's self-reports, and as explained further below, the ALJ noted good reasons for not finding Summers entirely credible.

      C.      **Credibility Determination**

Because an ALJ is in the best position to determine a witness's truthfulness, this court will not overturn an ALJ's credibility determination unless it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (internal quotations omitted). This does not mean the court is abdicating its supervisory role, but a credibility determination will be affirmed as long as the ALJ gives specific reasons that are supported by the record for his finding. *Sims v.*

*Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (credibility determinations rarely disturbed by a reviewing court); *Skarbeck v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Here, Summers has failed to show that the ALJ's reasons for credibility finding are without record support.

In reaching his decision, the ALJ thoroughly reviewed the medical record and provided several reasons for his decision (AR 170-71), most of which Summers challenges by offering her own explanation for a test result or why a particular treatment was not provided. However, Summers's lay assessments are not relevant. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)) (claimant "bears the burden of producing medical records showing her impairment").

Specifically, the ALJ indicated that Summers appeared eager to receive disability and prone to exaggeration. He pointed out that on April 8, 2010, a neurologist reported that "[t]he patient comes right off the bat stating that she 'needs to go on disability'" (AR 420), and that on April 19, 2010, Summers listed over 25 medical concerns to her provider (AR 436-37). Summers attempts to excuse both occurrences as misunderstandings, claiming that the neurologist mischaracterized her statement because he was aloof and unwilling to listen to her. She also claims to have provided an exhaustive list of her conditions because she was seeing a new provider. The ALJ correctly noted, however, that Summers has *continued* to claim that she suffers from several conditions that were not substantiated in the medical record, including Lyme's

disease, Crohn's disease, intermittent foot pain, carpal tunnel syndrome and rheumatoid arthritis.

Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may substantiate an ALJ's finding of exaggeration. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Powers v. Apfel*, 207 F.3d 431, 435–36 (7th Cir. 2000). Here, such discrepancies exist. First, Summers claims to have been diagnosed with carpal tunnel syndrome, for which she was given splints to wear, but (1) EMG testing in June 2010 could not conclusively diagnose carpal tunnel syndrome and (2) Summers has not otherwise been treated for the condition. (AR 487.) Second, despite her insistence that she has Lyme disease, Summers tested negative. (AR 503, 513.) Third, laboratory tests and x-rays also ruled out rheumatoid arthritis. (AR 511.) Finally, physicians found no evidence of infection to account for her claims of muscle and joint pain. (AR 453.) This does not mean some, or even all of these maladies, may not be, or have been, present, simply that the ALJ had good grounds to question Summers' self-reports.[3]

---

[3] Although Summers continues to deny exaggerating her conditions and claims to only be reporting what had been told her, the fact remains that she *did* provide either untrue or misleading information in some instances. Even one of her own treating physicians reported on July 13, 2010, that her reported pain was out of proportion to the physical findings. (AR 497, 501.) As a result, it was reasonable for the ALJ to conclude that Summers may not be the most reliable source regarding the nature and extent of her impairments. *See Schmidt v. Astrue*, 496 F.3d 833, 843–44 (7th Cir. 2007) (ALJ may disregard claimant's assertions of own pain if he validly finds them not credible).

Similarly, the record does not contain significant evidence of Summers having foot problems independent of her back pain. (Summers has alleged that her back condition can cause pain, tingling and numbness in her feet.) Although she complained of foot pain on February 2, 2005, x-rays of her foot showed normal bone and joint relationships. (AR 375, 378.) While Summers also takes issue with the fact that the ALJ found that she has retained the ability to ambulate effectively, alleging that her back disorder and fibromyalgia both greatly affect her ability to walk, the ALJ made his comment in reference to Summers' alleged *foot* pain. In any event, because the ALJ found Summers capable of sedentary work, her ability to ambulate on a sustained basis is not at issue in this case.

The ALJ also concluded that the medical findings and treatment related to Summers' back pain and fibromyalgia were not consistent with her reported symptoms. In doing so, the ALJ correctly reported that the treatment for Summers's fibromyalgia was limited to the use of hot and cold compresses (AR 474); noted that testing showed Summers has good muscle strength and normal neurological symptoms (AR 422); and pointed out that Summers's physicians also used only conservative treatment for her back pain. (AR 517.) Indeed, Summers did not seek *any* treatment between 2005 and 2009 (AR 513) or again after August 2010. (*Id.*) In 2010, a spinal MRI also showed only minimal findings (some early degenerative changes at L1-2, possible tiny annual tear, bulging at T7-8 and T8-9 levels), and her neurological examination was within normal limits. (AR 420-22, 443-44, 500-01.)

While Summers argues that the ALJ failed to give sufficient weight to her earlier MRI and CT scan, neither of these tests negate the 2010 findings. A July 21, 2004, MRI of Summers's thoracic spine showed mild levoscoliosis (spinal curve to the left) and an intervertebral disk bulge to the left at T8-9, and an MRI of her lumbar spine showed bulging disks with central annular tears at L1-2 and L5-S1 with moderate facet arthropathy (degenerative disease affecting joints) at L5-S1. (AR 345-46.) By February 15, 2005, however, a CT scan of her lumbar spine showed a large right posterior paramedian disk extrusion at L1-2 but only minimal degenerative changes at L2-3 and no abnormality at L5-S1. (AR 347.) Although Dr. Mark Kabins indicated on February 28, 2005, that Summers might be a candidate for surgical reconstruction at the L1-2 level, because she had not responded to conservative treatment and injection therapy, he noted on March 28, 2005, that surgery had not been recommended and Summers was to continue with conservative care, including physical therapy and muscle relaxers. (AR 349, 357, 481-83.) Summers did not receive further treatment until 2010, when she reported sciatic pain. (AR 394-95.)[4]

---

[4] **Error! Main Document Only.**In this case, there was evidence in the record and at the hearing that Summers did not seek treatment during that time because she did not have health insurance and could not afford it. (AR 57.) **Error! Main Document Only.**Because the Social Security Agency "has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment," *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (citing SSR 96–7p at *8), the ALJ should have addressed Summers' explanation explicitly in reaching his credibility determination, but failed to do so. To the extent that the ALJ erred in not considering Summers's lack of health insurance, however, that error was not fatal because substantial, other evidence discussed in the text above support his finding that her back pain was not as disabling as she claimed. *See Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when the ALJ's

In sum, the ALJ considered the relevant factors and gave specific reasons for not believing Summers' assertions that her pain precluded her from working, which are supported by the record. *Skarbeck*, 390 F.3d at 505. The court also is persuaded that the ALJ built a sufficiently accurate and logical bridge from the evidence to justify his conclusion that Summers' subjective complaints about her inability to work were exaggerated. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). As a result, Summers has not demonstrated that this is one of those rare occasions in which the court should disturb the ALJ's credibility finding.

D. RFC Assessment

a. General

Although Summers does not challenge the ALJ's assessment of her Residual Functional Capacity ("RFC") directly, Summers alleges that she suffers from fibromyalgia and chronic back pain on a daily basis, and that these conditions severely limit her ability

---

determination lacks any explanation or support that we will declare it to be 'patently wrong.'"). As discussed, Summers's condition did not worsen between 2005 and 2010: her 2010 imaging studies showed only minimal degeneration and she admits that she cut off treatment in August 2010, because she did not want to undergo further injections that were recommended before her providers would order pain medication or a surgical consult. (Pltf's Br., dkt. 26 at 8.) Moreover, while Summers implies that she could not afford medical care after 2010, her medical records indicate that she continued to access treatment and medication for a variety of conditions at a free clinic. As a result, it was reasonable for the ALJ to conclude that she could have continued to seek help for her back as well.

to stand, sit, turn, twist, reach and bend.[5]  In determining Summers' RFC, the ALJ appears to have considered all of Summers's reported symptoms, her treatment history and the opinion of the state agency physicians, Dr. Patricia Bush and Dr. Philip Cohen. (AR 169-71, 387, 407.)  Ultimately, the ALJ gave great weight to the opinion of Dr. Cohen, who found Summers capable of sedentary work, because Dr. Cohen had reviewed the most recent medical evidence and stated an opinion more consistent with the medical evidence as a whole.  (AR 171.)  (Dr. Bush had found Summers capable of medium level work.  (AR 387.))

Summers criticizes the ALJ's reliance on the consulting physician opinions because they did not examine her on a regular basis, but there are *no* opinions from Summers' treating physicians in the record.  Instead, Summers relies only on her own, subjective complaints to support her stated limitations.  As discussed above, the ALJ articulated good grounds for finding that Summers was not entirely credible.  In the absence of other reliable, contradictory evidence, the ALJ was, therefore, entitled to consider the consultant reports and attribute them significant weight.  *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) ("ALJ may properly rely upon the opinion of these medical experts"); 20 C.F.R. §§ 404.1527(f), 416.927(f) ("Administrative law judges must consider the findings

---

[5] The RFC assessment is an issue reserved to the ALJ and "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."  SSR 96–5p; *see also* 20 C.F.R. §§ 404.1545, 416.945.

of State agency medical and psychological consultants . . . as opinion evidence. . ."); SSR 96–5p (ALJ must consider state agency consulting reports as expert opinion evidence and address them in the decision).

### b. Fine Manipulation

Finally, Summers argued before the Appeals Council that the ALJ failed to explain why he found her capable of frequent versus occasional fine manipulation in assessing her residual functional capacity. (AR 164.) However, the ALJ discussed Summers's allegations that she suffered from carpal tunnel syndrome and correctly noted that there is no documentation in the record of her having any loss of function in her wrists and hands. (AR 170.) In fact, Summers testified at the hearing that (1) she only has occasional pain in her hands and fingers, and (2) she did not have too much trouble picking things up or doing things with her hands and fingers. As a result, the ALJ's decision that Summers could perform frequent fine manipulation is supported by substantial evidence.

Even assuming that the ALJ should have limited Summers to occasional fine manipulation, the vocational expert testified that this more restrictive limitation would not prevent Summers from working as a security monitor, for which there are 800 positions in Wisconsin. (AR 79-80.) Although the Court of Appeals for the Seventh Circuit has not drawn a bright line with respect to what number of jobs it considers significant, it has noted that other courts have found that as few as 174 jobs satisfy the commissioner's burden at this step. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)); *see also Trimiar v. Sullivan*, 966

F.2d 1326, 1330–32 (10th Cir. 1992) (850–1,000 jobs were significant number); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs are significant number); *Nix v. Sullivan*, 744 F. Supp. 855, 863 (N.D. Ill. 1990) (675 jobs are significant number), *aff'd*, 936 F.2d 575 (7th Cir. 1991). As a result, the ALJ did not commit reversible error with respect to Summers's fine manipulation limitation.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED, and that plaintiff Lianne Summers' appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 13th day of December, 2013.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge